NEW YORK SECURITY & TRUST CO. v. LOUISVILLE, E. & ST. L. C. R. CO. et al.

CLARKE v. HOPKINS et al.

(Circuit Court, D. Indiana. March 18, 1897.)

1. RAILROAD MORTGAGES—PRIORITY OF JUDGMENT FOR DEATH LOSS.
   A judgment against a railroad company for a death loss occurring in the operation of the road cannot be regarded as a necessary operating expense, and is not entitled to priority of payment over a mortgage upon that ground.

2. SURETY IN SUPERSEDEAS BOND—PREFERENCE OVER PRIOR MORTGAGE.
   When a surety signs a supersedeas bond without requiring any indemnity for so doing, he must be held to have done so on the personal credit of the principal, and is not entitled, upon the affirmance of the judgment, to preference over a prior mortgage upon the property of the principal.

In Equity. On demurrer to answer to intervening petition.

Miller & Elam, for petitioners.
William L. Taylor, for receivers.

BAKER, District Judge. On July 17, 1890, the petitioner recovered judgment for $9,000 and costs against the Louisville, Evansville & St. Louis Railroad Company. The judgment was recovered for a death loss arising from the negligence of the railroad company in causing the death of the petitioner's testator, who, at the time of the injury resulting in death, was a passenger on a train on said railroad. The railroad company sued out a writ of error to the supreme court of the United States, and procured a supersedeas upon filing a bond in the penal sum of $12,000, signed by the Louisville, Evansville & St. Louis Consolidated Railroad Com-

pany and David J. Mackey, who was then its president. The judgment was affirmed on March 15, 1894. A suit was thereafter brought on the bond against David J. Mackey. A judgment was recovered on December 31, 1894, for $11,530.34 and costs, and an execution was duly issued thereon, and returned nulla bona. On January 4, 1894, in the suit of Thomas Barrett et al. against the Louisville, Evansville & St. Louis Consolidated Railroad Company, Edward O. Hopkins and James H. Wilson were appointed by this court receivers of all the property and rights of said Louisville, Evansville & St. Louis Consolidated Railroad Company. They gave bond, and took immediate possession of said railroad property. On September 6, 1894, the New York Security & Trust Company filed an original bill in this court for the foreclosure of certain mortgages executed to it as trustee, covering all the property of said Louisville, Evansville & St. Louis Consolidated Railroad Company and its constituent companies, and on November 26, 1894, by an order of this court, the two cases then pending were consolidated, and Edward O. Hopkins and James H. Wilson were made the receivers of said property in the consolidated suit. During all the time after the testator lost his life down to about the time when the receivers were appointed in the case of Thomas Barrett et al. v. Louisville, Evansville & St. Louis Consolidated Railroad Company, the interest on all its mortgage indebtedness was paid. On and prior to January 4, 1894, David J. Mackey was the president of the Louisville, Evansville & St. Louis Railroad Company, and also of the Consolidated Company, and had the general management and control of the same, and was, at and before the said time, indebted to said railroad company in the sum of $70,000, of which sum not more than $18,400 has ever been paid or collected. Mackey is insolvent, and has been since January 4, 1894. The property in the hands of the receivers is covered by a mortgage indebtedness amounting to more than $5,000,000, which embraces all the property and income of the railroad, and which was executed and duly recorded long before the petitioner recovered his judgment. The earnings and income of the railroad are insufficient to meet current expenses and to pay interest on the mortgage indebtedness. The petitioner asks that his claim be adjudged to have a preference and priority of payment over the mortgage indebtedness of the railroad company. I have carefully examined all the cases cited by counsel, and have reached the conclusion that the claim is not entitled to a preference. A review and analysis of the numerous cases cited leading to this determination would not prove profitable, and the court therefore contents itself with a brief statement of the grounds on which its conclusion is based.

The law of its creation, and the nature of its business, necessarily require that a railroad should be maintained as a going concern by running its trains and serving the public as a common carrier. The duty is of legal obligation, and is of the essence of its right to corporate existence. The purchase of supplies, the employment of labor, the making of repairs and of suitable traffic arrangements are indispensably necessary to enable the railroad to perform its

public duties. Credit is essential to secure the property and service required to keep it in operation. Some courts have placed the right to charge the expenses on the income, and, if necessary, on the corporate property itself, in preference to the mortgage indebtedness, on the ground that the supplies, labor, repairs, and traffic arrangements go to the betterment of the mortgaged property. This ground seems unsatisfactory, because it often happens that no such betterment results; and, if such result occurs, it would be an unsound and dangerous doctrine to hold that the expenses incurred in improving the mortgaged estate can be recouped out of the mortgagee's security. No one ought to be improved out of his mortgage security without his consent. Other courts place the doctrine upon the theory of implied consent. The argument is that the mortgagee has taken his security with the knowledge that the railroad must be kept in operation, and therefore he will be presumed to have impliedly agreed that the expenses necessarily incurred in maintaining it as a going concern shall have a preference in payment over his mortgage indebtedness. It is not quite apparent how a mortgagee can be held to an implied consent in the face of his mortgage, which, in express terms, grants to him a prior lien on the entire income and property of the corporation. The right to priority of payment for property and services necessary to the operation of the railroad as a going concern would seem to arise from the primary and paramount duty owing to the state and the public to keep it a going concern, found in the law of its creation and in the purpose of its existence. It thence follows that when a mortgage is placed upon such property the security must, in the nature of things, be held to be subordinate to the charges which are necessarily incurred to enable the railroad to perform those prior and paramount duties due to the state by the law of its creation. But, whatever may be the true foundation of the doctrine, it cannot, without a flagrant invasion of contract rights, be extended to any other claims than those growing out of debts necessarily incurred in keeping the road in operation. It has never been held, and logically it cannot be held, that injuries to persons and property arising from its operation are among such preferred debts. Such injuries are accidental and fortuitous, and their payment cannot be regarded as necessary and indispensable operating expenses within the contemplation of the law. Hence it follows that the petitioner's claim is not entitled to priority on the ground that it was a necessary operating expense.

It is further contended that the petitioner is entitled to priority, because his right to sue out an execution and levy upon the property of the railroad company was denied to him by taking out a writ of error and filing a supersedeas bond, and that the surety, thus having saved the railroad property from seizure and sale, is entitled to indemnity and protection, and that the petitioner can avail himself of this equity in favor of the surety. The court is of opinion that this contention is unfounded. When a surety signs a supersedeas bond without requiring any indemnity for so doing, he must be held to have done so on the personal credit and re-

sponsibility of the principal. He becomes such surety voluntarily, and if he neither asks nor receives indemnity, on what ground can he be permitted to invoke an equitable lien, and be entitled to preference over a prior mortgage? If the surety had loaned the money to pay off the judgment, and thus have saved the property covered by the mortgage, he could not have acquired a prior lien for the money so advanced. By signing the bond he simply agrees to pay off the judgment at a later day, if the judgment should be affirmed. Why should one who has bound himself contingently to pay the judgment occupy a more favorable situation than he who pays it in the first instance? No case warrants such a preference of a surety unless other equitable circumstances exist which create an equitable right of priority. In the present case there are no equitable circumstances existing in favor of the surety. Indeed, he is a debtor of the railroad company to an amount largely in excess of the petitioner's claim, and is insolvent, and is not asking the court for protection.

The demurrer to the answers of the receivers is overruled, at the petitioner's costs